UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PAUL BATISTE D/B/A                                CIVIL ACTION
ARTANG PUBLISHING LLC

VERSUS                                            NO. 13-5463

FAHEEM RASHEED NAJM P/K/A                         SECTION "N" (1)
T-PAIN, ET AL

## ORDER AND REASONS

Before the Court is the Defendants' Motion to Dismiss (Rec. Doc. 58).  Plaintiff has filed

an opposition memoranda (Rec. Doc. 111), and the Defendants have filed a reply memoranda

(Rec. Doc. 113).

I.     **BACKGROUND**:

Plaintiff Paul Batiste, doing business as Artang Publishing LLC, is the founding member

and owner of the Batiste Brothers Band, founded in New Orleans, Louisiana in 1976.  Rec. Doc.

1 at 1.   In this copyright infringement action, the plaintiff has sued dozens of defendants

(including the Defendants[1] who are movants in the instant motion), alleging that 45 of his music

---

[1]  As used herein, the term "Defendants" includes:  EMI April Music Inc., EMI
Blackwood Music Inc., Sony/ATV Music Publishing LLC, Sony/ATV Songs LLC, Sony/ATV
Tunes LLC, RCA Records, RCA/Jive Label Group, Zomba Recording LLC, Capitol Records,
LLC, Songs of Universal, Inc., The Island Def Jam Music Group, UMG Recordings, Inc.,
Universal Music – MGB Songs, Universal Music – Z Tunes LLC, Universal Music Corporation,
Universal Music Publishing, Inc., Universal – Polygram International Publishing, Inc., Atlantic
Recording Corporation, Warner-Tamerlane Publishing Corp., WB Music Corp., Fueled by
Ramen LLC, Trac-NField Entertainment, Cash Money Records, Inc. and Nasty Beat Makers
Productions, Inc.

compositions are infringed in 63 of the Defendants' songs.  Plaintiff has alleged infringement of various beats, lyrics, chords, melodies, chants, hooks, horns, and "gliss" within his songs.  *See* Rec. Doc. 1.   On December 13, 2013, Defendants filed the instant motion as a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rec. Doc. 58. Given that both parties submitted materials outside the pleadings, the Court gave notice pursuant to Rule 12(d) that it would treat the motion as one for summary judgment pursuant to Rule 56. *See* Rec. Doc. 116.

## II.   APPLICABLE LAW:

### A.   Summary Judgment under Rule 56:

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   "When a party seeks summary judgment pursuant to an affirmative defense, such as a statute of limitation, the movant must establish all of the elements of the defense." *Citigroup Inc. v. Federal Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011).  "If the movant does so, the burden shifts to the nonmovant to provide specific facts showing the existence of a genuine issue for trial." *Id.*   "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010)  (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).   Although the Court must draw in favor of the nonmoving party all reasonable inferences that may be drawn from the evidence submitted, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of

evidence.' " *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)

(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)); *Bellard v. Gautreaux*,

675 F.3d 454, 460 (5th Cir. 2012).   The substantive law will determine the materiality of facts,

and "[o]nly disputes over facts that might affect the outcome of the suit under governing law will

properly preclude the entry of summary judgment."   *Liberty Lobby*, 477 U.S. at 248.

**B.**   **Copyright Infringement:**

To establish a claim for copyright infringement, a plaintiff must show:   (1) that he owns

a valid copyright (which is not challenged in the instant motion), and (2) that the defendant

copied constituent elements of the plaintiff's work that are original and copyrightable.   *Positive*

*Black Talk, Inc. v. Cash Money Records*, 394 F.3d 357, 367 (5th Cir. 2004), *abrogated on other*

*grds by Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010); *Engineering Dynamics, Inc. v.*

*Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994), *supplemented*, 46 F.3d 408 (5th Cir.

1995).   "To establish actionable copying (*i.e.* the second element), a plaintiff must prove:   (1)

factual copying and (2) substantial similarity."   *Positive Black Talk, Inc.*, 394 F.3d at 367.   This

traditional two-step determination — known traditionally as the *Arnstein* test[2] — continues to be

employed and has also evolved into more elaborate formulations, as discussed below.

The Defendants have assumed for purposes of the instant motion that the element of

factual copying can be met and ask the Court to dismiss the plaintiff's claims on grounds that the

second element of copying   — *i.e.,* the test for substantial similarity — cannot be met as a

---

[2] *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946).   *Arnstein* articulated the two elements this way:   "(a) that defendant copied from plaintiff's copyrighted work and (b) that the copying (assuming it to be proved) went so far as to constitute improper appropriation."   *Id.* at 468.

3

matter of law.   Thus, the standards for proving the element of factual copying are not directly relevant to the task at hand.   Nevertheless, because components of the factual copying inquiry are sometimes confused and conflated with those for determining substantial similarity (*i.e.*, the actionability of the copying), the Court will summarize the factual copying inquiry.   Also, because copying is actionable only where the defendant has copied aspects of the plaintiff's work that are original and subject to copyright,[3] the actionability inquiry (*i.e.*, substantial similarity) necessarily entails determination as to whether certain elements of the plaintiff's work are non-original or otherwise unprotectable.   Therefore, the Court will also address briefly the requirements of originality and protectability as well.

## 1.     Factual Copying — "Probative Similarity"

In some cases, the plaintiff has direct evidence of copying.   Indeed, it is not unusual for a defendant to admit copying a small element of the plaintiff's work and defend the suit solely on grounds that the copied element is unprotectable or that the portion copied was not substantial. Where copying is contested and direct evidence of copying is unavailable, "factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work and (2) probative similarity." *Positive Black Talk*, 394 F.3d at 368 (quoting *Peel & Co. v. Rug Mkt*, 238 F.3d 391, 394 (5th Cir. 2001).   Although courts once used the term "substantial similarity" to apply to both inquiries, the test for "probative similarity" differs in both purpose and substance from that for determining "substantial similarity" (*i.e.* whether the copying is legally actionable). In determining probative similarity, the plaintiff's entire work is considered — "including both copyrightable and non-copyrightable parts" — and compared with the defendant's work,

---

[3] *Positive Black Talk,* 394 F.3d at 367; *Eng'g Dynamics*, 26 F.3d at 1340.

"looking for any similarities between their constituent parts." *Positive Black Talk*, 394 F.3d at 369-70.  "[T]he fact that non-protectable elements were copied, although not a basis for liability, can be probative of whether protected elements were copied (*i.e.*, help establish probative similarity)." *Id.* (quoting *O.P. Solutions, Inc. v. Intellectual Prop. Network, Ltd.*, 1999 WL 47191 *3 (S.D.N.Y. 1999).   A finding of probative similarity may be supported by a finding of "any similarities between the two works (whether substantial or not) that, in the normal course of events, would not be expected to arise independently in the two works and that therefore might suggest that the defendant copied part of the plaintiff's work." *Positive Black Talk*, 394 F.3d at 370.[4]

## 2.    **Originality and Protectability:**

"[T]he mere fact that [a plaintiff's works] are copyrighted does not mean that all aspects of those [works] are automatically protected." *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir. 1994).   Although the work itself may be original and subject to copyright, it may contain constituent elements that are not subject to copyright because they are not original or because they are otherwise unprotectable, *e.g.*, because they constitute a concept, method, or idea or fall under the doctrine of public domain or *scènes à faire*.   In such a case, the

---

[4] The "inverse relationship" doctrine, referenced by plaintiff in his opposition memorandum (Rec. Doc. 111 at 7), relates to the degree of similarity required to establish probative similarity.  Where access is established, the level of probative similarity required is reduced, "at least to the extent that the plaintiff need not prove striking similarity." *Positive Black Talk*, 394 F.3d at 372 n.11.  "However, the degree of access never affects the ultimate burden to show substantial similarity."  It is simply circumstantial evidence of factual copying and is "irrelevant to the determination of whether the copying is legally actionable," which is the subject of the instant motion. *Id.*

copyright does not extend to the unprotectable element.  With some caveat,[5] similarity deriving from such unprotectable elements is not actionable.

"The *sine qua non* of copyright is originality."  *Feist Publications v. Rural Tel. Service*, 499 U.S. 340, 345 (1991).  Originality requires "that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  *Id.* at 358.  Thus, "the copyright is limited to those aspects of the work — termed 'expression' — that display the stamp of the author's originality."  *Kepner-Tregoe*, 12 F.3d at 533 (quoting *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 439 (1985)).   In other words, though the work may be original and copyrightable, the copyright does not extend to the non-original elements of the work, and the author has no right to prevent others from copying those elements that are not original.

"Some material is unprotectible because it is in the public domain, which means that it is free for the taking and cannot be appropriated by a single author even though it is included in a copyrighted work."  *Boisson v. Banian, Ltd.,* 273 F.3d 262, 268-69 (2nd Cir. 2001) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 710 (2nd Cir. 1992) (internal quotations omitted)).   "[A] work may be protected by copyright even though it is based on ... something already in the public domain if the author, through his skill and effort, has contributed a distinguishable variation from the older works."[6]  *Norma Ribbon & Trimming, Inc. v. Little*, 51

---

[5]   See discussions *infra* regarding the "total concept and feel" test and the issue of whether unprotectable elements may be considered in combination with other elements (either protected or themselves unprotectable) to contribute to an overall impression of substantial similarity.

[6]   The copyright in a derivative work extends only to the original material contributed by the author, as distinguished from the preexisting material used in the work.  17 U.S.C. § 103(b).

F.3d 45, 47 (5th Cir. 1995) (quoting *Donald v. Zack Meyer's T.V. Sales & Serv.*, 426 F.2d 1027,

1029 (5th Cir.1970), *cert. denied*, 400 U.S. 992 (1971)).   However, such a "distinguishable

variation" must be "substantial and not merely trivial."   *Id.* at 1030; *see also Eng'g Dynamics*, 26

F.3d at 1344 n.11 ("More than trivial originality is necessary....").

       Likewise, copyright protection does not extend to *scènes à faire*[7] material contained

within a work.   Such material includes "expressions that are standard, stock or common to a

particular subject matter or are dictated by external factors."   *Eng'g Dynamics*, 26 F.3d at 1344.

Although it originally referred to "stock" characters or scenes for literary works and film

(particular those with a historical setting),[8] it has been extended "to exclude from protection...

those elements of a work that necessarily result from external factors inherent in the subject

matter of the work."   *Mitel, Inc. v. Iqtel, Inc.,* 124 F.3d 1366, 1375 (10th Cir. 1997) (citing *Gates

Rubber Co. v. Bando Chemical Industries, Ltd.,* 9 F.3d 823, 838 (10th Cir. 1993)).   For example,

in the case of computer-related applications, these external factors may include "hardware

---

      [7] The french term "*scènes à faire*" has been translated as "scenes which 'must' be done." *Schwarz v. Universal Pictures Co.,* 85 F. Supp. 270, 275 (S.D. Cal. 1949).

      [8] *See e.g., Zalewski v. Cicero Builder Dev., Inc.,* — F.3d — , 2014 WL 2521388 *4 (2nd Cir. June 5, 2014) ("like cowboys, bank robbers, and shootouts in stories of the American West");  *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2nd Cir.1986) ("Elements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about the work of policemen in the South Bronx...Foot chases and the morale problems of policemen, not to mention the familiar figure of the Irish cop, are venerable and often-recurring themes of police fiction.");  *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2nd Cir. 1980) ("[I]t is virtually impossible to write about" the Hindenberg without including "a scene in a German beer hall, in which the airship's crew engages in revelry prior to the voyage ... [,] common German greetings of the period, such as 'Heil Hitler,' or songs, such as the German National anthem....");  *Black v. Gosdin*, 740 F. Supp. 1288, 1293 (M.D. Tenn. 1990) ("Having chosen the familiar theme of a broken-hearted lover seeking solace in country music, the choice of a barroom with a jukebox...cannot be attributed to any unique creativity....").

standards and mechanical specifications, software standards and compatibility requirements,

computer manufacturer design standards, industry programming practices, and practices and

demands of the industry being serviced." *Id.* at 1375 (citing *Gates Rubber*, 9 F.3d at 838;

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 709–10 (2nd Cir.1992).[9]   Thus, elements

that are customary to or dictated by the genre are not protected, as they are not original.[10]

In addition to questions of originality, protectability often entails the issue of abstraction.

Copyright protection extends "only to a particular expression of an idea, and not to the idea

itself." *Boisson* , 273 F.3d at 268; *see* 17 U.S.C. § 102(b) (copyright protection for an original

work does not extend to any idea, concept, or method, regardless of the form in which it might

be embodied in the work).  Thus, when an idea or concept "can be expressed in very few ways,"

the idea and the expression are said to be "merged," and the expression is deemed unprotectable.

*Kepner-Tregoe*, 12 F.3d at 533.

---

[9]  *See also Engineering Dynamics, Inc. v. Structural Software, Inc.,* 26 F.3d 1335, 1347 (5th Cir. 1994) ("On remand, the district court must consider whether or to what extent industry demand and practice in the offshore engineering market dictated the SACS IV input and output formats."); *Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer Serv., Inc.,* 807 F.2d 1256, 1262 (5th Cir. 1987) ("The record supports the inference that market factors play a significant role in determining the sequence and organization of cotton marketing software...").

[10]  *See, e.g., Zalewski v. Cicero Builder Dev., Inc.,* — F.3d — , 2014 WL 2521388 *7 (2nd Cir. June 5, 2014) ("There are *scènes-à-faire* in architecture.  Neoclassical government buildings, colonial houses, and modern high-rise office buildings are all recognized styles from which architects draw.  Elements taken from these styles should get no protection.  Likewise, there are certain market expectations for homes or commercial buildings.  Design features used by all architects, because of consumer demand, also get no protection."); *Cosmos Jewelry, Ltd. v. Po Sun Hon Co.,* 2009 WL 766517 *1 (9th Cir. 2009) (affirming trial judge's finding "that the sand-blast finish on the body of the petals and high polish finish on their edges either individually or in combination are 'standard, stock or common' to the medium of gold jewelry making — *i.e.* they are '*scenes a faire*' ").

3.      **Substantial Similarity — Determining Actionability:**

The "substantial similarity" inquiry determines whether factual copying is "quantitatively and qualitatively sufficient" to support liability.[11]   In other words, it tests whether the appropriation is "legally actionable."  *Positive Black Talk, Inc.*, 394 F.3d at 368 n.7.   The test has its root in the second step of the *Arnstein* test — *i.e.*, whether "the copying (assuming it to be proved) went so far as to constitute improper appropriation."  154 F.2d at 468.

a.      ***The "Laymen" or "Ordinary Observer" Approach:***

*Arnstein* itself gave little guidance as to substance of the test, stating only that "the test is the response of the ordinary lay hearer" to the work and that as such, " 'dissection' and expert testimony are irrelevant."  *Id.*   The question is simply whether the defendant took from the plaintiff's works "so much of what is pleasing to the ears of lay listeners" comprising "the audience for whom such popular music is composed" that it "wrongfully appropriated something which belongs to the plaintiff."  *Id.* at 473.   Post-*Arnstein*, the Second Circuit has added a little meat to the bones, stating that inquiry should be whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."  *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960).   This traditional "ordinary observer" test has evolved into several hybrids, the two most prominent variations being (1) the Ninth Circuit's "extrinsic/ intrinsic" test, and (2) the Second Circuit's "abstraction-filtration-comparison" analysis.   Although the Fifth Circuit has expressly adopted neither of these approaches outside of the computer software arena, aspects of both have permeated into this Circuit's jurisprudence.   Thus, both must be addressed.

----

[11]  *Positive Black Talk, Inc.*, 394 F.3d at 368 (quoting MELVILLE B. NIMMER, ET AL, 4 NIMMER ON COPYRIGHT § 13.01[B] at 13-12 (2004)).

b.      *The Ninth Circuit's "Extrinsic/Intrinsic" Test*:

In *Sid & Marty Krofft Television Productions, Inc.*,[12] the Ninth Circuit split the substantial similarity inquiry into two distinct analyses:   (1) one to assess whether there is substantial similarity "of the general ideas" (the extrinsic test),[13] and (2) a second to assess "the expressions of those ideas" (the intrinsic test).   *Krofft*, 562 F.2d at 1164.  The first test is labeled "extrinsic" because it depends not on the individual response of the factfinder to the work, but on "specific criteria" which can be "listed and analyzed," including "the type of artwork involved, the materials used, the subject matter, and the setting for the subject."  *Id.*   As with *Arnstein*'s test for inferring copying (now call "probative similarity"), "analytic dissection" and expert testimony are permitted in the extrinsic stage of the analysis.  *Id.*

The test for determining whether there is substantial similarity in expressions (as opposed to ideas) is called "intrinsic" because it "depend[s] on the response of the ordinary reasonable person" to the work.  *Id.*   The *Krofft* court seemed loath to explain the standard further, emphasizing that it is a subjective one left to the "ordinary reasonable observer."  *Id.* at 1168.  However, the *Krofft* court was firm that analytic dissection of the work — *i.e.,*  assessing similarity between isolated elements of the works — is inappropriate at this stage.  *Id.* at 1168.  Despite prominent differences evident in analytic dissection, a "combination of many different

---

[12]  562 F.2d 1157 (9th Cir. 1977).

[13]   It has been noted in the literature that the Ninth Circuit's approach likely "run[s] afoul of the strictures of § 102(b)," which prohibits the extension of copyright protection to ideas and concepts.  *See* Pamela Samuelson, *A Fresh Look at Tests for Nonliteral Copyright Infringement*, 107 Nw. U. L. Rev. 1821, 1830, 1832 (2013).

elements" may be entitled to protection "because of its particular subjective quality." *Id.*
Moreover, while a similarity by itself may be trivial, a finding of substantial appropriation may
nonetheless be appropriate due to the "over-all impact and effect." *Id.* (quoting *Malkin v.*
*Dubinsky*, 146 F. Supp. 111, 114 (S.D.N.Y. 1956)).

       Indeed, the Ninth Circuit has held that a subjective impression of similarity between the
works "considered as a whole" may support a finding of infringement even where that holistic
impression of similarity derives from elements that are themselves unprotectable.  In *Roth*
*Greeting Cards v. United Card Co.*,[14] the court held that, although the text of the plaintiff's
greeting cards (*e.g.,* "I miss you already") was not original enough to be protected and although
the defendant's card utilized different images (*e.g.*, a forlorn man vs. a forlorn boy), the copying
was actionable because "in total concept and feel" the cards were the same.   429 F.2d at 1110.
The court found that "the combination of art work conveying a particular mood with a particular
message" and "the arrangement of the words on the greeting card," including the lettering,[15] were
substantially the same.  *Id.*   Within the Ninth Circuit, this "total concept and feel" test has been
subsumed into the "intrinsic" portion of the test for substantial similarity.  *See, e.g., Shaw v.*
*Lindheim,* 809 F. Supp. 1393, 1402 ("The intrinsic test measures substantial similarity of
protectible expression based on the response of the ordinary reasonable person as to whether the
defendants' work captured the 'total concept and feel' of plaintiff's work...."); Samuelson, *supra*,
at 1830.

---

[14]   429 F.2d 1106 (9th Cir. 1970).

[15]   Typeface and "variations of typographic ornamentation, lettering or coloring" are not
subject to copyright.  37 C.F.R. § 202.1(a) and (e).

While the Ninth Circuit holds that a combination of unprotectable elements may sustain a finding of substantial similarity, this holding is not without limit.  *Satava v. Lowry,* 323 F.3d 805, 811 (9th Cir. 2003) ("It is true, of course, that a combination of unprotectable elements may qualify for copyright protection. ... But it is not true that any combination of unprotectable elements automatically qualifies for copyright protection").  The *Satava* court stated the limiting principle for this doctrine thusly:  "[A] combination of unprotectable elements is eligible for copyright protection *only if* those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Id.* (emphasis added).  Thus, for a combination of similar unprotectable elements to be actionable:  (1) the work must contain a sufficiently high number of similar elements; and (2) the selection and arrangement of the elements must be original.

### c.     *The Second Circuit's "Abstractions" and "Filtration" Analyses*:

The Second Circuit's "abstractions" and "filtration" analyses derive from Judge Learned Hand's opinion in *Nichols v. Universal Pictures*.[16]   The *Nichols* court was faced with the question of similarity between the plaintiff's play and the defendant's motion picture.  There was no similarity between the text of the two works, the characters were quite different in their particulars, and even the details of the plots diverged.  However, the two works shared a general theme or outline — "a quarrel between a Jewish and an Irish father, the marriage of their children, the birth of grandchildren and a reconciliation."  45 F.2d at 122.  The court acknowledged that, while ideas are not subject to copyright, neither can the copyright be "limited

---

[16]  45 F.2d 119 (2nd Cir. 1930).

12

literally to the text, else a plagiarist would escape by immaterial variations." *Id.* at 121.  Thus, the problem for the *Nichols* court lay in where to draw the line "between expression and what is expressed."  *Id.*  The court reasoned:  "Upon any work...a great number of patterns of increasing generality will fit equally well, as more and more of the incident [*i.e.*, the detail] is left out....but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his 'ideas'...  ."  *Id.*  Using this framework, the court concluded that the works before it were similar only in their basic themes or outlines, and that the plaintiff's basic theme was "too generalized an abstraction from what she wrote."  *Id.* at 122.  In other words, "[i]t was only part of her ideas" and "no more susceptible of copyright than the outline of Romeo and Juliet."  *Id.*

In *Computer Associates Int'l, Inc. v. Altai*,[17] the Second Circuit built upon Judge Hand's "abstractions" analysis to create the "abstraction-filtration-comparison" test, which is now widely used to assess infringement of computer programs.  The challenge for the *Altai* court was to formulate a structured approach for separating ideas, concepts, and processes in computer programming from their expression, as well as separating expression entitled to protection from that which is not, *e.g.*, due to non-originality, *scènes à faire*, merger, or public domain.  The resulting test is three-fold.  First, the court should "break down the allegedly infringed program into its constituent structural parts."  *Id.* at 706.   "Then, by examining each of these parts for such things as incorporated ideas, expression that is necessarily incidental to those ideas, and elements that are taken from the public domain, a court would then be able to sift out all

---

[17]  982 F.2d 693 (2nd Cir. 1992).

non-protectable material."  *Id.*  "Left with a kernel, or possible kernels, of creative expression after following this process of elimination, the court's last step would be to compare this material with the structure of an allegedly infringing program....[to] determine whether the protectable elements of the programs at issue are substantially similar so as to warrant a finding of infringement."  *Id.*  This final inquiry "focuses on whether the defendant copied any aspect of this protected expression, as well as an assessment of the copied portion's relative importance with respect to the plaintiff's overall program."  *Id.* at 710.

Under the traditional *Arnstein* test and even in *Nichols*, the use of "dissection" or expert testimony was discouraged if not prohibited in the final "substantial similarity" inquiry, which was judged strictly from the perspective of the ordinary lay listener or observer.   The *Altai* court, however, recognized that unlike film or music, the subject matter of computer programming is "somewhat impenetrable" and not readily comprehensible to the lay person, whether judge or jury.  *Id.* at 713.  Thus, in computer cases, the factfinder "need not be limited by the structures of his own lay perspective" and the admissibility of expert testimony, even on the substantial similarity question, should be left to the trial judge's discretion.  *Id.*   The *Altai* court emphasized, however, that "[i]n so holding, [it did] not intend to disturb the traditional role of lay observers in judging substantial similarity in copyright cases that involve the aesthetic arts, such as music, visual works or literature."  *Id.* at 713-14.

Although the *Altai* test has not been extensively employed in its pure form outside the realm of computer programming and other highly technical subject matters,[18] courts throughout

---

[18]  The Fifth Circuit, in *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335 (5th Cir. 1994), endorsed the abstraction-filtration-comparison test as a "method of determining copyright protection for computer programs."  *Id.* at 1342.

the country have borrowed from its structure to add a threshold "filtering" step to the traditional lay "ordinary observer" test in cases where the plaintiff's work contains both protected and unprotectable elements. *See, e.g., R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 683 (S.D. Tex. 2000). The Second Circuit refers to this filtering approach as a " 'more discerning' ordinary observer" test. *Hamil America Inc. v. GFI,* 193 F.3d 92, 101 (2nd Cir. 1999) (The "'more discerning' ordinary observer" standard "is applied when a work contains both protectible and unprotectible elements, and requires the court to eliminate the unprotectible elements from its consideration and to ask whether the protectible elements, standing alone, are substantially similar."), *cert. denied*, 528 U.S. 1160 (2000); *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765-66 (2nd Cir. 1991).

The Sixth Circuit has incorporated this threshold "filtering" step into a structured two-tier analysis. "[1] first, the court must 'identify[ ] which aspects of the artist's work, if any, are protectible by copyright' and, [2] second, 'determin[e] whether the allegedly infringing work is substantially similar to the protectible elements of the artist's work.' " *Bridgeport Music, Inc. v. UMG Recordings, Inc.,* 585 F.3d 267, 274 (6th Cir. 2009) (quoting *Kohus v. Mariol*, 328 F.3d 848, 855 (6th Cir. 2003)) (internal quotation and citation omitted). "To complete the first step, the court must 'filter' out elements of the work that are not original to the author[,].... [*s*]*cènes à faire*, the indispensable or standard aspects of a work, or those that 'follow directly from unprotectable ideas'.... " *Id.* (footnote omitted) (quoting *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318-19 (6th Cir. 2004)).

Other courts have simply applied the filter as a threshold matter or as an integral part of the substantial similarity inquiry itself. *See, e.g. Mattel, Inc. v. MGA Entertainment, Inc.,* 616 F.3d 904, 916 (9th Cir. 2010) (Kozinski, J.) ("The district court did err, however, in failing to

filter out all the unprotectable elements of Bryant's sketches. * * * Although substantial similarity was the appropriate standard, a finding of substantial similarity between two works can't be based on similarities in unprotectable elements.");[19] *R. Ready Prods.,* 85 F. Supp. 2d at 683 ("In determining whether there is substantial similarity that will suffice for proof of infringement, the Court should first filter out all of those elements that are not protected under copyright laws."); *Churchill Livingstone, Inc. v. Williams & Wilkins,* 949 F. Supp. 1045, 1050 (S.D.N.Y. 1996) ("An elaborate abstraction-filtration-comparison for each and every element of an alleged infringement, which may be helpful to deal with a complex computer program when the claim is nonliteral similarity, may not be necessary in a straightforward textual copyright case.  In a case such as this, simply examining the relevant parts of a copyrighted work will allow a court to apply settled copyright principles and thereby filter out unprotected elements.").

Against this backdrop, the Eight Circuit stands out in expressly disallowing the filtering of unprotectable elements.   In *Taylor Corp. v. Four Seasons Greetings, LLC,* in two consecutive opinions (*Taylor I* and *Taylor II*),[20] the Eight Circuit (which follows the Ninth Circuit's "intrinsic/extrinsic" test), rejected the defendant's argument that the district court should have analyzed the works more closely to determine whether the similarity between them derived solely from unprotectable elements.  315 F.3d at 1043; 403 F.3d at 966.   The court found no error in the district court's "total concept and feel" analysis[21] and held that it is "improper to perform analytic dissection, or 'filtering,' when conducting the 'intrinsic' step."  403 F.3d at 966.

---

[19]  The *Mattel* court's analysis is quite different from that in *Roth Greeting Cards,* discussed *supra* and *infra.*

[20]  315 F.3d 1039, 1043 (8th Cir. 2003); 403 F.3d 958, 966 (8th Cir. 2005).

[21]  315 F.3d at 1043.

### d. *Reconciling "Filter" with "Total Concept and Feel"*

Given the apparent inconsistencies between a "filter" analysis and the Ninth Circuit's "total concept and feel" approach, it is somewhat surprising that the Second Circuit, matrix of the "filter" approach (also known as the "more discerning" ordinary observer test), has also adopted the "total concept and feel" approach (though without the analytical structure of the extrinsic/intrinsic test), including holding that a combination of unprotectable elements can support a finding of substantial similarity. On their faces, these two approaches seem mutually exclusive, as the Eight Circuit has found.[22]   At a minimum, as other courts have recognized, reconciling the two "is not... straightforward." *Mena v. Fox Entertainment Group, Inc.*, 2012 WL 4741389 *4 (S.D.N.Y. 2012).[23]   It can be done, however. If the "total concept and feel" test is read with an eye toward *Feist* and the limiting principles enunciated in *Satava*, *supra*, it need not devolve into the "wholly amorphous" "abdication of analysis" it has been critically called.[24] Moreover, when read in light of their specific facts, the cases in which courts have found substantial similarity based an original combination of unprotectable elements (which this Court will refer to as the "unique combination"[25] cases) reveal that the two approaches can co-exist peacefully, even synergistically.

---

[22]   *Taylor I*, 315 F.3d at 1043; *Taylor II*, 403 F.3d at 966.

[23]   *See also Gordon v. McGinley*, 2011 WL 3648606 *3 (S.D.N.Y. 2011) ("Courts have noted the apparent tension between a copyright test that embraces the holistic impression of the lay observer and one that imposes the partial filter of the 'more discerning' observer."); *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 436 (S.D.N.Y. 2011) ("On its face, disavowing the notion that courts should compare only those elements which are in themselves copyrightable seems hard to square with the more discerning observer test ....") (internal citations omitted)).

[24]   *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2nd Cir. 2003) (quoting MELVILLE B. NIMMER, ET AL, 4 NIMMER ON COPYRIGHT § 13.03[A][1] (2003)).

[25]   *See Hobbs v. John,* 722 F.3d 1089, 1093 n.4 (7th Cir. 2013).

The "unique combination" cases out of the Second Circuit are particularly helpful to understanding how these two analyses can and should work together.   One of the first such cases was *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1004 (2nd Cir. 1995), in which the defendant had made almost exact copies of the plaintiff's fall-theme sweaters.   The defendant argued that the copying was not actionable because the elements copied were not protectable – *e.g.*, fall colors, images of squirrels and fall leaves.   The *Knitwaves* court rejected this argument, finding it inconsistent with the Supreme Court's decision in *Feist*.[26]   71 F.3d at 1003.   In *Feist*, the Supreme Court found that the plaintiff's telephone directory failed to meet the originality requirement because the "selection, coordination, and arrangement" of the content (which itself consisted of unprotectable facts) was "devoid of even the slightest trace of creativity."   499 U.S. at 362.   However, the *Feist* court's analysis makes clear that a combination comprised entirely of unprotectable elements — even the white pages — can be subject to copyright *provided* the author's "selection, coordination, and arrangement" of the elements are sufficiently creative and original.   *Id.* ("The question that remains is whether [the plaintiff] selected, coordinated, or arranged these uncopyrightable facts in an original way.").   As the *Knitwaves*  court explained: "What is protectible then is 'the author's original contributions,' — the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work."   71 F.3d at 1004 (quoting *Feist*, 499 U.S. at 358).   Therefore, the "more discerning" test (*i.e*, the "filter" analysis) does not require that the court "dissect [constituent elements] into their separate components, and compare *only* those elements which are in themselves copyrightable."   *Id.* at 1003 (emphasis).

---

[26]   499 U.S. 340, 362 (1991).

What role is left then for the "more discerning" or "filter" test?  The court in *Mena v. Fox Entertainment Group, Inc.*[27] does an excellent job explaining the way the two tests should work together.  There, the plaintiff argued that the court "should not engage in the filtration process that the discerning observer test seems to require and instead should be principally guided by comparing the contested work's 'total concept and overall feel' with that of the allegedly infringing work."  2012 WL 4741389 at *4 (quoting plaintiff's brief, internal quotation marks omitted).   The defendant, on the other hand, urged the court to "confine its focus narrowly to the individual protectible elements of [the plaintiff's] work, ignoring those aspects of [his] work that are unprotectible in making the comparison."  *Id.* (quoting defendant's brief, internal quotation marks omitted).   As the *Mena* court, explained, "[n]either...position accurately describes the state of the law."  *Id.*

While a court's analysis should begin with the "more discerning" test, by filtering out similarity based solely on unprotectable elements, the court should remain mindful that this "runs the risk of overlooking wholesale usurpation of [the] author's expression."  *Id.* at *5 (quoting *Hoehling*, 618 F.2d at 979–80).   Thus, a "dissected" filtered analysis is not "independently sufficient."  *Id.*   To determine if the author has created a unique combination of unprotectable elements, the court should also perform the "total concept and feel" analysis.  *Id.* To guard against this latter analysis becoming "*carte blanche* to rest findings of infringement on vague or amorphous determinations," the court should "take[] care to identify precisely the particular aesthetic decisions—original to the plaintiff and copied by the defendant—that might be thought to make the designs similar in the aggregate."  *Id.* at *6 (quoting *Tufenkian,* 338 F.3d

---

[27]  2012 WL 4741389 (S.D.N.Y. 2012).

19

at 134).   In this way, the court can ensure that a finding of substantial similarity in such cases is based not on any similarity between the unprotectable elements themselves, but on a copying of the author's unique selection and arrangement of those elements, which is creative and original.[28]

For the most part, the cases bear this out.  Indeed, in nearly all the "unique combination" cases the reader can sense a strong conviction that the plaintiff's creative work was flagrantly pirated.[29]   In *Roth Greeting Cards* — the source of the "total concept and feel" test — the defendant was shown to have a practice of acquiring the plaintiff's greeting cards at retail and gift shows, making minor changes, and then selling the copies under its own label.  429 F.2d at 1110-11.   The messages in the cards were unprotectable short phrases.  But the Ninth Circuit held that the "proper analysis of the problem requires that all elements of each card, including text, arrangement of text, art work, and association between art work and text, be considered as a whole."  "  *Id.* at 1109.  Doing so, the court found the similarity between the cards to be "remarkable."  *Id.* at 1110.   For example, one Roth card had on its front "a colored drawing of a cute moppet suppressing a smile and, on the inside, the words 'I wuv you.' "  *Id.*  The defendant's corresponding card was "identical," except for "minor variations in color and style."  *Id.*   A Roth card with "I miss you already" on the front, depicted a forlorn, weeping boy with an inside message reading "And You Haven't even Left."  *Id.*  The defendant's copy was identical, simply changing the drawing of the weeping boy to a drawing of a "forlorn and weeping man."  *Id.*

---

[28]   On the point that it is the unique arrangement or combination that the subject of the copyright in such cases, see *Hobbs,* 722 F.3d at 1093 n.4, and cases cited therein.

[29]   *See, e.g., Jarvis v. A & M Records,* 827 F. Supp. 282, 292 (D.N.J. 1993) (although the individual words and phrases "Ooh" "Move" and "Free Your Body" were not protectable, in this case "the precise relationship of the phrases *vis a vis* each other was copied.  There is no question that the combined phrase 'ooh ooh ooh ooh ... move ... free your body' is an expression of an idea that was copyrightable....Again, the fact that defendants appropriated the exact arrangement of plaintiff's composition says more than what can be captured in abstract legal analysis.").

Likewise, in *Knitwaves* (the case of the fall sweaters), the defendant's sweaters not only "feature[d] the same two fall symbols...leaves and squirrels" that the plaintiff used, they also (1) rendered the squirrel and leaf in a substantially similar way, (2) "employed them in virtually the same manner...as felt appliques stitched to the sweaters' surface," (3) placed them "on strikingly similar backgrounds ('shadow-striped' for the Leaf Sweater, and four-paneled for the Squirrel Cardigan);" and (4) used "virtually the same color scheme." 71 F.3d at 1004.  Indeed, on the leaf sweater, the defendant even copied the plaintiff's "unusual manner of stitching the leaves to the sweater," with the leaves stitched not "around their edges but rather along the veins of the leaves, leaving the edges unattached."  *Id.* at n.4.   The backgrounds were so similar, the court found that the defendant's background had been obviously "lifted entirely" from the plaintiff's work.[30]  In short, the similarity was "overwhelming."  *Id.* at 1005.   The defendant had not simply copied unprotectable constituent elements from the plaintiff's work, as the defendant contended; it had copied wholesale the plaintiff's unique selection and arrangements of those elements.[31]

---

[30]  71 F.3d at 1005 n.5 ("The stripes on Knitwaves' Leaf Sweater, in particular, were lifted entirely by Lollytogs, with only subtle changes; their color scheme remains the same on both sweaters—red, orange, olive, purple, yellow, green, orange, red, from top to bottom, separated by thin, black and brown 'shadow stripes.'  The color scheme of Knitwaves' Squirrel Cardigan has likewise been lifted:  progressing clockwise from the upper left, the quadrants are yellow, red, orange, and purple; they are divided by a green band which also rings the neck and waist of the sweater.").

[31]  71 F.3d at 1004 (The plaintiff's "original contribution" did not consist "merely—as Lollytogs would have it—in arranging leaves or squirrels in a specific pattern, but in (1) selecting leaves and squirrels as its dominant design elements; (2) coordinating these design elements with a 'fall' palette of colors and with a 'shadow-striped' (for the Leaf Sweater) or a four-paneled (for the Squirrel Cardigan) background; and (3) arranging all the design elements and colors into an original pattern for each sweater.").

e.    _The Fifth Circuit Jurisprudence_:

The district court in _Positive Black Talk_, after analyzing the state of the law, stated that it would "be forced to basically take a shot in the dark as to the law to be applied."  2003 WL 1921999 (E.D. La. 1999).   Although the Fifth Circuit's subsequent opinion in that case provided some guidance,[32] it is still difficult to articulate with certainty how the Fifth Circuit would analyze substantial similarity in a music copyright case.  Part of the reason for this is that the court in _Positive Black Talk_ adhered tightly to a plain error analysis, the plaintiff having failed to object to specific jury instructions.  394 F.3d at 368-69.  Thus, the court limited itself to discerning whether the district court had made an "obviously incorrect statement of law" and largely refrained from making affirmative pronouncements as to the standard the court would have applied _de novo_.

One thing that can be said with certainty is that the Fifth Circuit has traditionally applied the "layman" or "ordinary listener" test, which was articulated in _Creations Unlimited_:   "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.' "  _Creations Unlimited, Inc. v. McCain_, 112 F.3d 814, 816 (5th Cir. 1997).   This formulation was tacitly approved in _Positive Black Talk_, and both sides here agree that this is the basic applicable standard for determining substantial similarity.

It also seems fairly clear that the Fifth Circuit would endorse the threshold use of a "filter" to exclude unprotectable elements from the substantial similarity analysis.   The Circuit

---

[32]   _Positive Black Talk_, 394 F.3d 357 (5th Cir. 2004).

did so expressly in *Kepner-Tregoe,*[33] stating:  "To determine the scope of copyright protection in a close case, a court may have to filter out ideas, processes, facts, idea/expression mergers, and other unprotectable elements of plaintiff's copyrighted materials to ascertain whether the defendant infringed protectable elements of those materials."  12 F.3d at 533-34.  The court stated further that if the defendant had copied *only* "unprotectable elements" of the plaintiff's work, it would be required to "reverse the district court's judgment" finding infringement.  *Id.* at 533.

Although *Kepner-Tregoe* did not deal with music or any other artistic expression, the opinion contains nothing to suggest that the filtering of unprotectable elements should not be done in such cases.   At least two other Sections of this Court have utilized a "filter" analysis in determining substantial similarity in a music copyright case.  *See Positive Black Talk, Inc. v. Cash Money Records,* 2003 WL 1921999 *2 (E.D. La. 2003) ("[D]etermination as to infringement of a copyright—the issue in this case—involves identification and isolation of the work's unprotectible elements... .  Such identification is necessary because a finding of infringement cannot be premised solely upon copying of non-protectible elements of a musical composition."); *Landry v. Atlantic Recording Corp.*, 2007 WL 4302074 *4 (E.D. La. 2007) ("Where there are both protectible and unprotectible elements of a work, the court must "attempt to extract the unprotectible elements from ... consideration and ask whether the protectible elements standing alone are substantially similar.") (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2nd Cir.1995)).  Of course, *Kepner-Tregoe* must be read in light of the Supreme Court's opinion in *Feist*.

---

[33]  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527 (5th Cir. 1994).

23

     *f.*  **The Approach Employed Herein:**

   In light of the foregoing, the substantial similarity inquiry employed herein shall be two-fold:  a dissection and "filtering" of unprotectable constituent elements, as prescribed in *Kepner-Tregoe,*[34] followed by a side-by-side comparison using the "layperson" standard articulated in *Creations Unlimited.*[35]   Given the plaintiff's allegation that the Defendants have infringed particular constituent elements of his songs (*e.g.*, melody, hook, lyrics), it also seems clear that a side-by-side comparison of these individual elements is appropriate.  In *Positive Black Talk*, the plaintiff argued that the district court erred in its jury instructions by suggesting that the jury was required "to compare the two works *as a whole*" to determine whether there was "*overall* similarity" between the songs.  394 F.3d at 373-74 (emphasis added).   The court found that by instructing the jury to compare the expressions in the two works "that are shared," the district court had "correctly indicate[d] that the jury should compare the *parts* of the two songs that are similar in determining substantial similarity."  *Id.* at 374 (emphasis added).  Thus, a finding of substantial similarity may be based on a similarity between constituent elements, even where the songs "as a whole" are overall dissimilar.   Upon a finding of such similarity between constituent elements, the importance of the similar element(s) would then be assessed both quantitatively and qualitatively to determine whether the similarity qualifies as "substantial" and, thus, is actionable.  *Id.* at 373 & n.12.

   What is less clear is the extent to which the Ninth Circuit's "total concept and feel" analysis should play a role in this Court's analysis.   The district court in *Positive Black Talk* used

---

[34]  12 F.3d at 533-34.

[35]  112 F.3d at 816

the Ninth Circuit's "extrinsic/intrinsic" test,[36] and even instructed the jury that the test was

whether the intended audience would find the "total concept and feel" of the two songs to be

substantially similar.  394 F.3d at 373.  On review, the Fifth Circuit found no plain error in the

jury instruction and stated that the "test articulated in *Creations Unlimited* is similar to the Ninth

Circuit's intrinsic test, which...asks whether the ordinary reasonable person would find the *total*

*concept and feel* of the works to be substantially similar."  394 F.3d at 374 n.13 (emphasis

added) (quotations omitted).   This of course raises the "unique combination" question.

        The question is more than academic in this case, for as to several songs the plaintiff's

allegations of infringement are based:   (1) on similarity as to a single element (*e.g.,* beat), which

the Court has found to be unprotectable, (2) on similarity between multiple elements, all of

which the Court has found to be unprotectable, or (3) on similarity between multiple elements,

certain of which are protected and certain of which are unprotectable.   Where the alleged

infringement is based solely on the alleged copying of a *single* unprotectable element, it seems

clear that a finding of substantial similarity would be directly contrary to the Fifth Circuit's

holding in *Kepner-Tregoe*.   *See* 12 F.3d at 533 (a conclusion that the defendant "only copied

unprotectable elements" of the plaintiff's work would mandate reversal of district court's

judgment finding infringement).[37]   Thus, where the plaintiff has claimed infringement of a

particular song based solely on the copying of a single unprotectable element, the Court has

---

[36]  *See* 2003 WL 1921999 at *3.

[37]  While there is some scant suggestion in the case law that a particularly novel rendition
of an unprotectable element might itself be protectable, *see Bucklew v. Hawkins, Ash, Baptie &
Co.*, 329 F.3d 923, 929 (7th Cir.2003) ("[I]t is the combination of [unprotectable] elements, *or
particular novel twists given to them*, that supply the minimal originality required for copyright
protection.") (emphasis added), there is no basis in the record to find that any of the plaintiff's
works fall into this category.

found the claim to be non-actionable as a threshold matter.  In all other cases, including claims

based upon alleged similarity as to two unprotectable elements, the Court has performed a side-

by-side comparison of the allegedly infringed and infringing songs.

Where the individual elements are themselves protectable, the Court has evaluated the

songs *both* (1) for similarity between the elements alleged in the complaint to be similar (as

described in *Positive Black Talk*) and (2) for similarity as to a combination of elements and/or as

to the work as a whole, including assessing whether particular parts of the songs might be similar

due a combination of elements, even though the works taken as a whole are dissimilar.  Where

one or more of the alleged elements is unprotectable, the Court has considered the unprotectable

element(s) only in evaluating the works for similarity as to a combination of elements and/or as

to the work as a whole and only to the extent that such element(s) contribute to an overall unique

"selection, coordination, and arrangement" of elements that might itself be original.[38]

In short, the Court has evaluated the song pairs under every possible analysis set forth

above.   With the exception of three claims, the Court was unable to find substantial similarity

utilizing *any* test.   These three exceptions are:  (1) "Move That Body" (allegedly infringed by

Nelly's "Move That Body"); (2) "I Like Your Way" (allegedly infringed by T-Pain's "Put It

Down"); and (3) "Blues Man" (allegedly infringed by T-Pain's "Reggae Night").   As to "Move

That Body" (versus Nelly's "Move That Body") and "I Like Your Way" (versus T-Pain's "Put It

Down"), the Court's conclusion is that a reasonable juror could find substantial similarity under

---

[38]  *See Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (upholding finding of substantial similarity based on "unique compilation" of five unprotectible elements shared between the two songs:  (1) title "hook" phrase (including the lyric, rhythm, and pitch); (2) shifted cadence; (3) instrumental figures; (4) verse/chorus relationship; and (5) fade ending).

any of the tests above.  The only claim for which the tests produce an inconsistent finding is that of  "Blues Man" (allegedly infringed by T-Pain's "Reggae Night").   As will be explained below, the "total concept and feel" of "Blues Man" and "Reggae Night" are not at all similar.  However, a reasonable juror might be able to find a substantial similarity under a "dissection" approach.  Thus, given the implication in *Positive Black Talk*  that substantial similarity necessitates only that *parts* of a work be similar (provided the similar parts are sufficiently qualitatively and/or quantitatively important), the Court will nonetheless deny summary judgment at this juncture as to the "Blues Man" claim, as well.

   To summarize, with the exception of claims based solely on a single unprotectable element (which the Court has found to be non-actionable as a threshold matter), the Court has conducted a side-by-side listening comparison of each of the plaintiff's songs and the song that allegedly infringes it.   In doing so, the Court compared each pair of songs (the allegedly infringed song vs. the allegedly infringing song) by assessing both (1) whether there is similarity between any protectable element allegedly infringed and the element of the Defendant's song that allegedly infringed it; and (2) whether there is any similarity between the "total concept and feel" of the plaintiff's song (or part thereof) and the "total concept and feel" of the allegedly infringing song, including any similarity that might be enhanced or derived from an unprotectable element.  These approaches produced identical results except as to "Blues Man" (allegedly infringed by T-Pain's "Reggae Night"), which discrepancy the Court resolved in the plaintiff's favor.

**III.**     **ANALYSIS:**

The Court will address first the "filter" analysis wherein the Court determined certain constituent elements to be unprotectable and found to be non-actionable those alleged infringements which were based solely on alleged similarity in a single unprotectable element. Thereafter, the Court will explain the side-by-side comparison of the songs that remained.

**A.**     **Filter Analysis:**

In his complaint, as to each of his 45 songs, the plaintiff specifies the constituent musical elements within the song that he claims have been infringed by one or more of the Defendants' songs.   These musical elements include beat, lyrics, chords, melody, chant, "hook," horns, and "gliss."   Both melody and hook[39] are protected in all circumstances herein.   Beat, chords, chant, horns, and "gliss," as used in the plaintiff's works, are not protectable, as discussed below. Lyrics generally are protected, but not those at issue here.

**1.**     **Lyrics:  Unprotectable Words and Short Phrases**

Lyrics are protected by copyright as a "literary work" — an expression "in words."  *See* 17 U.S.C. § 101.   However, single "[w]ords and short phrases such as names, titles, and slogans," are not protected.   37 C.F.R. § 202.1(a).  In addition, common expressions and phrases are not entitled to protection for they do not satisfy the originality requirement.  *See, e.g., Emanation Inc. v. Zomba Recording Inc.*, 72 Fed. App'x 187, 190 (5th Cir. 2003) (finding that

---

[39]  "Hook" is "the qualitatively most important part" of a song, *Positive Black Talk*, 394 F.3d at 374, the part that is most "memorable" or catchy.  *Landry*, 2007 WL 4302074 at *1.  It is sometimes equated with "refrain" or "chorus," being often found there in popular music.  *See, e.g., Armour v. Knowles,* 512 F.3d 147, 151 (5th Cir. 2007); *Peters v. West,* 692 F.3d 629, 631 (7th Cir. 2012).

common Cajun phrases 'We Gon Pass a Good Time, Yeah, Cher" and "You Gotta Suck Da Head

of Dem Der Crawfish" do not satisfy the originality requirement"); *Johnson v. Gordon*, 409 F.3d

12, 23-24 (1ˢᵗ Cir. 2005) (lyric "You're the one for me" found to be "too trite to warrant copyright

protection"); *Prunte v. Universal Music Group, Inc.,* 699 F. Supp. 2d 15, 26 (D.D.C. 2010) (use

of short phrase "so high" and use of touching the sky as a metaphor for being high found to be

too clichéd to support a finding of actionable copyright infringement); *Jean v. Bug Music Inc.*,

2002 WL 287786 *6 (S.D.N.Y. 2002) ("[A] reasonable jury could only conclude that the lyrical

excerpt 'clap your hands' is not afforded copyright protection because the excerpt is a common

phrase.").

      The plaintiff does not specify in his complaint which lyrics he contends are infringed or

the lyrics of the Defendant's songs that are infringing.   In opposition to the instant motion, the

plaintiff submitted the report of Archie K. Milton, which contains cryptic references to lyrics,

most of which do not even specify the song from which they are extracted.  The defendant's

expert, Lawrence Ferrara, Ph.D., is more helpful, as Dr. Ferrara extracted any lyrics from the

allegedly infringed and infringing songs that were even arguably similar.   The chart below

compares the Defendant's lyrics for which there can be found even a remote similarity to the

plaintiff's lyrics.

| Defendant's Song | Plaintiff's Song | Lyrics |
|---|---|---|
| "Freeze" by T-Pain | "Freeze" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert: "Now Freeze" in both songs. |
| | | Δ's Expert:  T-Pain's song uses only the word "Freeze" without "Now." **[To the Court's ear, T-Pain's song does include the word "Now."]** |

| | | |
|---|---|---|
| "Freeze" by T-Pain | "Dancin' Shoes" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert: "Dancin' Shoes" in both songs. |
| | | Δ's Expert:  "Girl I want to battle, meet me downstairs...Bring your dancin' shoes and something to tie your hair" **vs.** "Get ready, I've got my dancin' shoes on" |
| "All I Do Is Win" by DJ Khaled | "Sportsman's Paradise" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert:  "Win  win win no matter what" **vs.** "Win win win at all cost" |
| | | Δ's Expert: "All I Do is win win win no matter what" **vs.** "Win, win, win at all cost" |
| "All I Do Is Win" by DJ Khaled | "Move That Body" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert:  (1) "Got money on my mind and I can never get enough" **vs.** "Got music on my brain and I can't get enough;" (2) "And every time I step into the building"  **vs.** "And every time I step into the house;" (3) "Everybody hands go up" **vs.** "Everybody come along;" (4) "And they stay there" **vs.** "And let it go" |
| | | Δ's Expert:  (1) "Floss 'em up; toss 'em up; hard away; boss 'em up; pardon me; I'm bossin' up; pressure up..." **vs.** "Fire it up; give it up; blow it up; suck it up; pump it up; wind it up; buck it up;" (2) "And if you're goin' n' put your hands in the air; make 'em stay there" **vs.** "Raise your hand in the air; jump up and down like you just don't care." |
| "Overtime" by Ace Hood | "Overtime" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert: Word "overtime" in both songs. |
| | | Δ's Expert:  "It's do or die; Gotta put it overtime; 'Cause it's now or never; I'm gonna put it on the line; I gotta win so I'm gon grind; Put it overtime, overtime,...(overtime); 'Cause I got money on my mind; give me every penny, every dime ...." **vs.** "...Overtime, over you; It's all right, day and night; 'Cause when I get through I'll be loving you" |
| "Blame It" by Jamie Foxx | "Do It Right Now" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert:  "The time has come to make it happen is the lyric."  [sic] |
| | | Δ's Expert:  Finds no similar lyrics. |
| "I'm Sprung" by T-Pain | "Drowning In My Blues" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert:  Mentions no similar lyrics. |
| | | Δ's Expert:   Finds no similar lyrics. |
| "Low" | "Dancin' Shoes" | Complaint:  Specifies no similar lyrics. |
| | | Π's Expert:  Mentions no similar lyrics. |
| | | Δ's Expert:  Finds no similar lyrics. |

| "What's Wrong" by Jennifer Hudson | "Can't Get You Off My Mind" | Complaint:  Specifies no similar lyrics. |
| | | II's Expert:  Mentions no similar lyrics. |
| | | Δ's Expert:   Finds no similar lyrics. |
| "Good Life" by Kayne West | "Spice" | Complaint:  Specifies no similar lyrics. |
| | | II's Expert:  Both reference popular cities. |
| | | Δ's Expert:  "It feel like Atlanta; It feel like LA; It feel like Miami; It feel like NY" **vs.** "LA is the spice of life; New York is the Spice of Life." |

Having analyzed these, as well as conducting its own scrutiny of the songs purportedly

containing infringed or infringing lyrics, the Court concludes that none the allegedly infringed

lyrics is entitled to copyright protection.  As can be seen from the chart, most of the allegedly

infringed lyrics amount to one word or a very short phrase (*e.g.*, "Now freeze," "Overtime,"

"Dancin' shoes," "LA," "New York").[40]   These are not entitled to protection.  *See* 37 C.F.R. §

202.1(a).  Even those that consist of more than two words (*e.g.* "I can't get enough," "Win, win,

win, at all cost," "raise your hands in the air")[41] are common, everyday expressions, which do not

satisfy the originality requirement.[42]   Moreover, many of the allegedly infringing lyrics

---

[40]  The dance directive "Now Freeze" is not original to the plaintiff's song, allegedly authored in 1982 (Rec. Doc. 1 at ¶ 47).  *See, e.g.,* HARVEY SCALES & THE 7 SOUNDS, GET DOWN (Magic Touch Records 1967); *cf.* THE J. GEILS BAND, FREEZE FRAME (EMI 1981).

[41]  The hip-hop call-and-response directive to raise or put one's hands in the air dates from the 1970s and is not original to the plaintiff's song, allegedly authored in 1999.  *See, e.g.,* THE SUGARHILL GANG, RAPPER'S DELIGHT (Sugar Hill Studios 1979) ("Just throw your hands up in the air and party hardy like you just don't care.").

[42]  The Court excludes from this holding "Move That Body" by Nelly as compared with plaintiff's "Move That Body."  As to these lyrics, the Court makes no finding at this juncture as to whether the originality requirements are met.  Because the Court has determined that a reasonable juror could find substantial similarity between these two songs and elements thereof, the Court finds it appropriate to deny summary judgment as to all claims related to the alleged infringement of plaintiff's "Move That Body" by Nelly's "Move That Body."  Although the plaintiff has alleged similarity of lyrics as to "Move That Body," it is not included on the chart

referenced by Mr. Milton bear no similarity to the plaintiff's lyrics.  *Compare, e.g.,* "All I Do Is Win" *with* "Sportsman's Paradise."

Five of the claimed infringements are based on allege similarity as to lyrics only.  These are:  (1) "Overtime" by Ace Hood vs. plaintiff's "Overtime;" (2) "All I do Is Win" by DJ Khaled vs. plaintiff's "Move That Body;" (3) "All I do Is Win" by DJ Khaled vs. plaintiff's "Sportsman's Paradise;" (4) "Good Life" by Kanye West vs. plaintiff's "Spice;" and (5) "Freeze" by T-Pain vs. plaintiff's "Dancing Shoes."   These are dismissed as part of the "filtering" analysis, for the alleged similarity is based solely on a single unprotectable element.   Where the plaintiff has alleged similarity as to lyrics in addition to other elements, the Court has included lyrics as part of the side-by-side comparison discussed below, to determine whether the lyrics, while unprotectable themselves, might contribute to an overall impression of similarity.

2.    *Scènes à Faire*:   Unoriginal "Chords" and "Beat"

The Plaintiff has alleged that the defendants have infringed the "chords" and "beat" in dozens of his songs.  However, the basic harmonic and rhythmic building blocks of music, especially popular music, have long been treated by courts as well-worn, unoriginal elements that are not entitled to copyright protection.  Moreover, the basic beats and chord progressions used in the plaintiff's songs are customary throughout the funk and R & B genres, making them unprotectable *scènes à faire*, as explained below.

above.

As recognized long ago in *Northern Music Corp. v. King Record Distributing Co.*,[43]
harmony "is achieved according to rules which have been known for many years." 105 F. Supp.
at 400. "Being in the public domain for so long," it will rarely, if ever be "itself...the subject of
copyright." *Id.* Not surprisingly, courts have been consistent in holding that the basic chord
progressions so ubiquitous in popular music are unoriginal and, thus, unprotectable. *See, e.g.,*
*Johnson v. Gordon,* 409 F.3d 12, 23 (1st Cir. 2005) (finding III, II chord progression to be a
"stereotypical building block of music composition" and thus "unprotectable"); *Tisi v. Patrick,*
97 F. Supp. 2d 539, 544 (S.D.N.Y. 2000) (basic chord progression found to be "so common to
rock and pop genres (indeed, to every type of Western music)" that it did not support finding of
infringement); *McRae v. Smith*, 968 F. Supp. 559, 566-67 (D. Colo. 1997) (finding "chord
progression and rhythmic feel" to be "used in thousands of other songs" and thus "non
protectable"); *Jarvis v. A & M Records*, 827 F. Supp. 282, 291 (D.N.J. 1993) ("Easily arrived at
phrases and chord progressions are usually non copyrightable..."); *Intersong-USA v. CBS, Inc.,*
757 F. Supp. 274, 282 (S.D.N.Y. 1991) (harmonic progression found to be unprotectable *scènes
à faire*); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) (finding that "although chord
progressions may not be individually protected," they could combine with rhythm and pitch to
support a finding of infringement). While it is theoretically possible that a common chord
progression could be "exploited in an original (and thus, protectable) manner,"[44] it would be a
rare occurrence. Certainly, there is nothing in this record to suggest that the plaintiff exploited
chord progressions in an original way not customary to the genre.

---

[43]  105 F. Supp. 393 (S.D.N.Y 1952).

[44]  *Gordon*, 409 F.3d at 23.

As with chord progressions, there are only a limited number of tempos, and "these appear to have been long since exhausted." *Northern Music*, 105 F. Supp. at 400. Thus, "originality of rhythm is a rarity, if not an impossibility." *Id.* Accordingly, as with chords, courts have been consistent in finding rhythm to be unprotectable. *See, e.g.*, *Currin v. Arista Record, Inc.* 724 F. Supp. 2d 286, 294 (D. Conn. 2010) (basic 4/4 rhythm is "commonplace"); *Velez v. Sony Discos,* 2007 WL 120686 *12 (S.D.N.Y. 2007) (finding "common time rhythm" used in both songs to be unprotectable *scènes à faire*)*; Tisi*, 97 F. Supp. 2d at 544 (guitar rhythm and "basic percussion rhythm" found to be "extremely common in the pop rock genre"); *McRae*, 968 F. Supp. at 566 (two-step rhythm found to be "similar to many other country songs" and thus "non protectable"); *Intersong*, 757 F. Supp. at 282 ("recurring eighth note rhythm" found to be unprotectable *scènes à faire*). While it is possible that rhythm might be expressed in an original and innovative way, there is nothing in this record to suggest that the plaintiff's use of rhythm is anything but customary to the genre.   Thus, like chords, it is an unprotectable element.

Twenty-two (22) of the claimed infringements are based upon alleged similarity as to "chords" alone:

| "Chords Only" Claims | | |
|---|---|---|
| **Artist** | **Defendant's Song** | **Plaintiff's Song** |
| 1 | Ace Hood | Body 2 Body | Runnin' Away |
| 2 | Ace Hood | ErryThang | Runnin' Away |
| 3 | Akon | 69 | Can't Get You Out Of My Mind |
| 4 | Akon | Holla Holla | It's All About The Family |
| 5 | DJ Khaled | All I Do Is Win | Louisiana |
| 6 | DJ Khaled | No New Friends | Can't Get You Out Of My Mind |
| 7 | Jaime Foxx | Blame It | Nothin' But The Funk |
| 8 | | | Spice |
| 9 | Lonely Island | I ****ed My Aunt | Runnin' Away |
| 10 | Rick Ross | Aston Martin Music | Romantic Sequence |
| 11 | Rick Ross | B.M.F. | Fur Elise |

| 12 | Rick Ross | The Boss | Ring Me |
| 13 | Tay Dizm | Beam Me Up | Party Down |
| 14 | T-Pain | Can't Believe It | Slow and Easy |
| 15 | T-Pain | Church | Fur Elise |
| 16 | T-Pain | Freeze | Hooked On You |
| 17 | T-Pain | I'm Sprung | Can't Get You Out Of My Mind |
| 18 | T-Pain | Put It Down | Can't Get You Out Of My Mind |
| 19 | T-Pain | Regular Girl | Nothin' But The Funk |
| 20 | T-Pain | Save You | Can't Get You Out Of My Mind |
| 21 | T-Pain | Show U How | Still (Singing the Blues) |
| 22 | T-Pain / Lil Wane | Bang Bang Pow Pow | It's All About The Family |

Twenty-nine (29) of the claimed infringements are based upon alleged similarity as to "beat" alone:

| | "Beat Only" Claims | | |
|---|---|---|---|
| | Artists | Song Title | Plaintiff's Song |
| 1 | Ace Hood | Overtime | I Got The Rhythm On |
| 2 | Ace Hood | Body 2 Body | Bam There You Have It |
| 3 | Akon | 69 | Drowning In My Blues |
| 4 | Akon | Holla Holla | Drowning In My Blues |
| 5 | DJ Khaled | All I Do Is Win | Ring Me |
| 6 | DJ Khaled | I Wish You Would | Bam There You Have It |
| 7 | DJ Khaled | No New Friends | Bam There You Have It |
| 8 | DJ Khaled | Take It To The Head | Drowning In My Blues |
| 9 | DJ Khaled | Welcome To My Hood | It's On (The Jam Is On) |
| 10 | E40 | U and Dat | Spice |
| 11 | Jennifer Hudson | What's Wrong | I Like Your Way |
| 12 | Kanye West | Good Life | Hip Jazz |
| 13 | Nelly | Move That Body | Love Fest |
| 14 | Pitbull | Hey Baby | Starlite |
| 15 | Rick Ross | All The Money In The World | Drowning In My Blues |
| 16 | Rick Ross | Aston Martin Music | Bam There You Have It |
| 17 | Rick Ross | B.M.F. | My Bad |
| 18 | Rick Ross | The Boss | Drowning In My Blues |
| 19 | T-Pain | 5 O' Clock | Drowning In My Blues |
| 20 | T-Pain | Buy You A Drank | Drowning In My Blues |
| 21 | T-Pain | Church | Space Station |
| 22 | T-Pain | Freeze | Sportsman's Paradise |
| 23 | T-Pain | Nuthin' | Kids |
| 24 | T-Pain | Rap Song | Bam There You Have It |

| 25 | T-Pain | Reggae Night | Bam There You Have It |
| 26 | T-Pain | Regular Girl | Runnin' Away |
| 27 | T-Pain | Show U How | Hooked On You |
| 28 | T-Pain | Take Your Shirt Off | Bam There You Have It |
| 29 | T-Pain / Lil Wane | Bang Bang Pow Pow | Oh Carnival |

All of these claims ("chords only" claims and "beat only" claims) are dismissed herein as part of the Court's "filter" analysis, for the alleged similarity is based solely on a single unprotectable element.  Where the plaintiff has alleged similarity as to "chords" or "beat" in addition to similarity as to other elements (including where "chord" and "beat" are the only two elements alleged to be similar), the Court has included chord and beat as part of its side-by-side comparison to determine whether they might contribute to holistic impression of similarity.

### 3.    Other Basic Musical Elements Not Original to the Plaintiff

The only alleged similarity between T-Pain's "Freeze" and the plaintiff's "When She Smiles" is in the "gliss" (glissando).[45]   Likewise, one of the alleged similarities between Lonely Island's "I ****ed My Aunt" and the plaintiff's "Goin See the Man" is in the use of "horns." Both the use of horns and the use of glissando are common, centuries-old musical practices.  *See* Ferrara Reports (Rec. Doc. 58-4 at 58 of 191; Rec. Doc. 113-2 at 19 of 20).   Obviously, neither is original to the plaintiff.   Nor are they used in an uncommon or original way.   While either of these devices might combine with other elements (*e.g.*, melody) to establish infringement, standing alone they cannot sustain a finding of substantial similarity.   As gliss is the only alleged similarity between T-Pain's "Freeze" and "When She Smiles," this claim is dismissed as a threshold matter.

---

[45]  Glissando is the basic musical element of sliding up or down from one pitch to another, as when a pianist slides her finger up the keys or a trombonist moves the slide while continuing to blow.

Finally, in claiming infringement of "Sportman's Paradise" by Chris Brown's "Kiss, Kiss," the sole similarity alleged is in "chant."  As described by the defendant's expert, the chants in these two songs feature a "shouted lyric that starts with an 'ah' on the second half of beat 3 that swoops up, and is followed by an accented word on the next downbeat."[46]  Rec. Doc. 58-4 at 86.   As Dr. Ferrara explains, this precise type of chant — "using the word 'Ah' that swoops up, and then follows with an accented word on the next downbeat" — "dates back to at least to the 1960's," as evidenced by at least three recorded instances of its usage that predate the plaintiff's, which was authored in 1999.[47]  *Id.* at 86-87.[48]  Because the sole alleged similarity between these songs is this unoriginal element, this claim, too, will be dismissed as a threshold matter.

> **B.**      **Side-by-Side Comparison**:

For all claimed infringements as to which the plaintiff alleged similarity as to melody, hook, or a combination of elements, the Court performed a side-by-side comparison to determine whether an ordinary reasonable listener would find the works (or parts thereof) to be substantially similar.  The Court listened for similarities in "dissected" elements and also for similarity as to combinations of elements and in the works as a whole.  Because of the sheer number of claims and because the Court made every conceivable effort to give the plaintiff's claims the benefit of the doubt, the process was a long and tedious one.  Despite the care with

---

[46]  "The chant in 'Sportsman's Paradise' occurs at 0:39, 0:49, 2:25, 2:25, 3:51, and 4:01 (sounding like 'ah, got you' at 0:39, 'ah, groovin' ' at 0:49, 'ah, slam' at 2:15, 'ah, dust it' at 2:25, 'ah, slam' at 3:51, and 'ah, zoom' at 4:01). The chant in 'Kiss Kiss' occurs at 2:02 (as "ah, hoo")."  Rec. Doc. 58-4 at 86.

[47]  Rec. Doc. 1 at ¶ 55.

[48]  THE FOUR TOPS, REACH OUT I'LL BE THERE (Motown 1966); THE PRECISIONS, IF THIS IS LOVE (I'D RATHER BE LONELY) (Drew-1003 1967); THE JACKSON 5, ABC (Motown 1970).

which the Court undertook its task, in the overwhelming majority of claims, it found no

similarity at all.   The chart below lists those claims as to which the Court was unable to find

even a slight similarity.

| | Artists | Song Title | Plaintiff's Song | Claim |
|---|---|---|---|---|
| | **Side-by-Side Comparison – No Similarities Found** | | | |
| 1 | Ace Hood | Overtime | Sudden Death | Melody |
| 2 | Ace Hood | Cash Flow | Blues Man | Beat |
| 3 | | | Blues Man | Hook |
| 4 | Ace Hood | Can't Stop | Sportsman's Paradise | Chords |
| 5 | | | Sportsman's Paradise | Beat |
| 6 | | | Sportsman's Paradise | Melody |
| 7 | Ace Hood | Stressin' | Romantic Sequence | Chords |
| 8 | | | Romantic Sequence | Beat |
| 9 | Ace Hood | Top of the World | Louisiana | Chords |
| 10 | | | Louisiana | Beat |
| 11 | Akon | 69 | Download My Love | Hook |
| 12 | Akon | Holla Holla | My Bad | Hook |
| 13 | Baby Bash | Cyclone | It's On (The Jam Is On) | Melody |
| 14 | | | It's On (The Jam Is On) | Beat |
| 15 | | | It's On (The Jam Is On) | Hook |
| 16 | Chris Brown | Kiss Kiss | It's On (The Jam Is On) | Beat |
| 17 | | | It's On (The Jam Is On) | Melody |
| 18 | Ciara | Go Girl | Space Station | Chords |
| 19 | | | Space Station | Beat |
| 20 | | | Space Station | Melody |
| 21 | DJ Khaled | All I Do Is Win | I Got the Rhythm On | Melody |
| 22 | | | Still (Singing the Blues) | Melody |
| 23 | DJ Khaled | I'm So Hood | It's On (The Jam Is On) | Beat |
| 24 | | | It's On (The Jam Is On) | Melody |
| 25 | DJ Khaled | I Wish You Would | Still (Singing the Blues) | Chords |
| 26 | | | Still (Singing the Blues) | Hook |
| 27 | DJ Khaled | No New Friends | It's All About the Family | Hook |
| 28 | DJ Khaled | Out Here Grindin | Space Station | Beat |
| 29 | | | Space Station | Melody |
| 30 | | | Still (Singing the Blues) | Hook |
| 31 | DJ Khaled | Take It to the Head | Never Leave You Baby | Chords |
| 32 | | | Never Leave You Baby | Hook |

| 33 | DJ Khaled | We Taking Over' | Move That Body | Beat |
|---|---|---|---|---|
| 34 | | | Move That Body | Hook |
| 35 | | | Still (Singing the Blues) | Melody |
| 36 | DJ Khaled | Welcome To My Hood | Ring Me | Hook |
| 37 | E40 | U and Dat | It's On (The Jam Is On) | Melody |
| 38 | Flo-Rida | Low | Dancin' Shoes | Chords |
| 39 | | | Dancin' Shoes | Beat |
| 40 | | | Dancin' Shoes | Lyrics |
| 41 | | | Dancin' Shoes | Melody |
| 42 | Jaime Foxx | Blame It | Do It Right Now | Melody |
| 43 | | | Do It Right Now | Lyrics |
| 44 | | | My Bad | Melody |
| 45 | | | Runnin' Away | Melody |
| 46 | Jennifer Hudson | What's Wrong | Can't Get You Off My Mind | Melody |
| 47 | | | Can't Get You Off My Mind | Lyrics |
| 48 | Jesse McCartney | Body Language | Drowning in My Blues | Beat |
| 49 | | | Drowning in My Blues | Melody |
| 50 | Kanye West | Good Life | Can't Get You Off My Mind | Chords |
| 51 | | | Can't Get You Off My Mind | Melody |
| 52 | Lil Kim | Download | Can't Get You Off My Mind | Chords |
| 53 | | | Can't Get You Off My Mind | Beat |
| 54 | | | Can't Get You Off My Mind | Melody |
| 55 | | | Download My Love | Melody |
| 56 | Lil Mama | Shawty Get Loose | Space Station | Melody |
| 57 | | | Space Station | Chords |
| 58 | | | Space Station | Beat |
| 59 | Lonely Island | I ****ed My Aunt | Goin' See The Man | Beat |
| 60 | | | Goin' See The Man | Horn |
| 61 | Pitbull | Hey Baby | Love Horizon | Melody |
| 62 | Pitbull | Shake Seniora | Tropical Blue | Chords |
| 63 | | | Tropical Blue | Beat |
| 64 | | | I'll Be There | Melody |
| 65 | Rick Ross | All the Money in the World | Never Leave You Baby | Chords |
| 66 | | | Never Leave You Baby | Hook |
| 67 | Rick Ross | The Boss | Still (Singing the Blues) | Hook |
| 68 | Snoop Dog | Boom | Bam There You Have It | Beat |
| 69 | | | Bam There You Have It | Melody |
| 70 | | | Sportsman's Paradise | Melody |
| 71 | Tay Dizm | Beam Me Up | Starlite | Beat |
| 72 | | | Starlite | Hook |
| 73 | | | Starlite | Melody |

| 74 | T-Pain | 5 O'Clock | Just You And I | Chords |
| 75 | | | Just You And I | Melody |
| 76 | T-Pain | Best Love Song | Overtime | Chords |
| 77 | | | Overtime | Beat |
| 78 | | | Do It Right Now | Melody |
| 79 | T-Pain | Booty Wurk | Space Station | Beat |
| 80 | | | Space Station | Melody |
| 81 | T-Pain | Buy You a Drank | I'll Be There | Chords |
| 82 | | | I'll Be There | Melody |
| 83 | T-Pain | Can't Believe It | Hooked On You | Melody |
| 84 | | | Hooked On You | Beat |
| 85 | T-Pain | Church | Sportsman's Paradise | Hook |
| 86 | T-Pain | Freeze | Freeze | Melody |
| 87 | | | Freeze | Lyrics |
| 88 | | | It's All About the Family | Melody |
| 89 | T-Pain | Freaknik is Back | Fur Elise | Chords |
| 90 | | | Fur Elise | Beat |
| 91 | T-Pain | I'm Sprung | Drowning in My Blues | Beat |
| 92 | | | Drowning in My Blues | Lyrics |
| 93 | T-Pain | Karaoke | Ring Me | Chords |
| 94 | | | Ring Me | Beat |
| 95 | | | Ring Me | Melody |
| 96 | T-Pain | Nuthin' | It's On (The Jam Is On) | Melody |
| 97 | T-Pain | Rap Song | Runnin' Away | Chords |
| 98 | | | Runnin' Away | Melody |
| 99 | T-Pain | Reality Show | Hooked On You | Melody |
| 100 | | | Can't Get You Off My Mind | Beat |
| 101 | | | Can't Get You Off My Mind | Chords |
| 102 | | | It's All About the Family | Melody |
| 103 | T-Pain | Regular Girl | My Bad | Hook |
| 104 | T-Pain | Save You | Runnin' Away | Melody |
| 105 | | | Runnin' Away | Beat |
| 106 | T-Pain | Sho-Time | Can't Get You Off My Mind | Beat |
| 107 | | | Can't Get You Off My Mind | Melody |
| 108 | T-Pain | Show U How | Can't Get You Off My Mind | Melody |
| 109 | T-Pain | Take Your Shirt Off | Move That Body | Melody |
| 110 | T-Pain | Turn All The Lights On | Starlite | Melody |
| 111 | | | Starlite | Beat |
| 112 | | | Starlite | Hook |
| 113 | T-Pain | You Got Me | Can't Get You Off My Mind | Melody |
| 114 | | | Can't Get You Off My Mind | Beat |

| 115 | T-Pain / Lil Wayne | Bang Bang Pow Pow | Nothin' But the Funk | Hook |
| 116 | Travie McCoy | Billionaire | Download My Love | Chords |
| 117 | | | Download My Love | Melody |
| 118 | | | Louisiana | Melody |
| 119 | | | Reggae Music | Beat |
| 120 | | | Reggae Music | Chords |
| 121 | | | Still (Singing the Blues) | Melody |
| 122 | Young Cash | Freeze | Bam There You Have It | Chords |
| 123 | | | Bam There You Have It | Beat |
| 124 | | | Freeze | Hook |

The most that can be said with respect to these claims in terms of similarity is that the plaintiff's songs and the allegedly infringing songs can all be categorized as popular music and, thus, share the same basic (usually danceable) beat ubiquitous in popular music and occasionally share one of the basic chord progressions common to all popular music genres. That is where the similarity ends. The "total concept and feel" of the plaintiff's songs are dramatically different from the songs that allegedly infringe them. The Defendant's songs are rap and/or hip-hop. The plaintiff's songs range from classic rhythm and blues, to disco, to the classic New Orleans funk style that can be heard at venues throughout this city on any given evening. A few of the plaintiff's songs have a popular jazz style reminiscent of that which was popular in the late 1960s and early 1970s. Virtually everything about these song pairs is different: the genre, the themes, the melodies, the harmonies, the lyrics, the vocals, and the instrumentation. Indeed, it is difficult to overstate how different they sound to the lay ear. Moreover, this lay perception of lack of similarity is supported by the detailed and methodical musicological analysis of the defendant's expert, Dr. Ferrara. *See* Rec. Docs. 58-4, 113-2. No reasonable juror could find substantial similarity as to any of these claims.

As to a small number of claims, the Court was able to detect some very slight similarity in an element shared between the plaintiff's song and the allegedly infringing song.  These pairs are listed in the following chart:

| Side-by-Side Comparison – Only Slight Similarities Found | | | | | |
|---|---|---|---|---|---|
| **Δ's Song** | **at** | **Similar Element** | **Π's Song** | **at** | **Similar Element** |
| Ace Hood "Overtime" | 0:13 | Low background melody in combination with drumbeats | "Sudden Death" | 0:00 | Synthesizer melody in combination with drumbeats |
| Baby Bash "Cyclone" | 0:13 | Scratching oscillating synthesizer motif | "It's On (The Jam Is On)" | 0:12 | Background guitar melody |
| Lil Mama "Shawty Get Loose" | 0:03 | Beeping (whistle-like) "hook"in the background | "Space Station" | 0:16 | Melodic synthesizer "hook" |
| Snoop Dog "Boom" | 0:00 | Beeping high-pitch melodic synthesizer "hook" | "Sportsman's Paradise" | 0:20 | Piano-like synthesizer background melody |
| T-Pain "Can't Believe It" | 0:13 | High-pitch bell-like synthesizer tones | "Hooked On You" | 0:17 | High-pitch synthesizer melody |
| T-Pain "Church" | 0:12 | Repeating fast guitar | "Sportsman's Paradise" | 0:20 | Guitar background |
| T-Pain "Freeze" | 0:03 | Scratching synthesizer melody | "Freeze" | 0:05 | Background guitar melody |
| " | 0:08 | Scratching synthesizer melody | "It's All About The Family" | 0:06 | Synthesizer background harmonies |

| | | | | | |
|---|---|---|---|---|---|
| T-Pain "Rap Song" | 0:13 | Jingling piano-tone sequence | "Runnin' Away" | 0:00 | Synthesizer melody |
| T-Pain "Reality Show" | 0:07 | Short piano melody | "Hooked On You" | 0:17 | Wind instrument's melody |
| " | 0:02 | Jingling element of the "hook" | "Can't Get You Off My Mind" | 0:00 | Low-pitch electronic melody |
| T-Pain "Reality Show" | 0:03 | Guitar element of the "hook" | "It's All About The Family" | 0:00 | Element of the synthesizer "hook" |
| T-Pain "Save You" | 0:20 | Synthesizer low-pitch sounds | "Runnin' Away" | 0:00 | Synthesizer (or key-board) melody |
| T-Pain "Sho-Time" | 0:01 | Bell-like high-pitch melody | "Can't Get You Off My Mind" | 0:14 | Guitar background melody |
| T-Pain "Turn All The Lights On" | 0:01 | Low scratching electronic "hook" | "Starlite" | 0:10 | Low pulsing synthesizer background |

Using a "dissection" analysis and relying heavily on the export reports, the Court was able to hear faint similarities in certain of the specific elements (melody or hook) alleged to be similar with respect to these claims.   On closer listening, however, the melodies and hooks in question prove to be quite different.   Thus, the similarity is very slight — certainly not substantial, even when the somewhat similar element is isolated.[49]   Under a "total concept and feel" analysis, these songs are scarcely more similar than those discussed above, wherein the

---

[49] By "isolated" the Court simply means that the Court attempted to focus on the element alleged to be similar rather than the more prominent features overlaying and obscuring it.   No additional or enhanced technology was used.

Court found no similarity at all.  No layperson would find them to be even remotely alike. Moreover, the similarities are based on features (*e.g.*, a jingling or pulsing synthesizer element) that are common in nearly all pop genres.  These findings are bolstered by Dr. Ferrara's methodical analysis.  *See* Rec. Docs. 58-4, 113-2.

Thus, as to all of the claims in these two charts, the Court finds that no reasonable juror could find substantial similarity — as to the constituent elements stated in the complaint, as to any combination of those elements, as to the songs taken as a whole, or as to any part(s) thereof. As to these claims, the Defendants are entitled to judgment as a matter of law.

This leaves three pairs of songs remaining:   (1) "Move That Body" (allegedly infringed by Nelly's "Move That Body"); (2) "I Like Your Way" (allegedly infringed by T-Pain's "Put It Down"); and (3) "Blues Man" (allegedly infringed by T-Pain's "Reggae Night").   As to "Move That Body" (versus Nelly's "Move That Body") and "I Like Your Way" (versus T-Pain's "Put It Down"), the Court's conclusion is that a reasonable juror could find substantial similarity under any of the various approaches discussed above.

Dr. Ferrara concluded that the similarity between Nelly's "Move That Body" and the plaintiff's "Move That Body" is limited to the use of the same title phrase "Move That Body," which is repeated in the hook lyrics of both songs.  *See* Rec. Doc. 58-4 at 24-26.  Dr. Ferrara found the melodies to be very different.  *Id.* at 25.  However, Dr. Ferrara's scoring of the two melodies compares the vocals of Nelly's chorus to the vocals of the plaintiff's chorus.  The melody that is shared in the two songs, however, is not carried by the vocals in the plaintiff's song.  While it is carried by both synthesizer and vocals in Nelly's song, it is carried in the plaintiff's song largely by the synthesizer "hook," which weaves throughout the entirety of the plaintiff's song.   The vocals in the plaintiff's song carry a very different and much less catchy

melody.   The melodic "hook" in the plaintiff's song seems to be carried by the synthesizer and, to lay ears, it sounds quite similar to the melodic hook in Nelly's song.[50]   Moreover, both songs share rap elements, and the while the lyrics are quite different (outside of the lyrical hook "Move That Body"), they both share a sexual theme that is quite similar.  Finally, although the title and lyrical hook in the two songs are likely not themselves subject to copyright, their identity enhances the overall similarity between the works taken as a whole.

        While the similarities between "I Like Your Way" and T-Pain's "Put It Down" are not as striking as those between the two "Move That Body" songs, they are likewise substantial.  Dr. Ferrara concluded that there is no similarity between the beat and melody in "I Like Your Way" and those in T-Pain's "Put It Down."  *See* Rec. Doc. 58-4 at 115-16.  The Court, however, finds a similarity between the melody (carried by the vocals) in the chorus of both songs.[51]   This melody is echoed in the chord progressions throughout both songs.  Moreover, both songs share a very similar tempo.   Given all of these similarities, the court finds that as to these two pairs of songs — "Move That Body" (versus Nelly's "Move That Body") and "I Like Your Way" (versus T-Pain's "Put It Down") — a reasonable juror could find substantial similarity and that such a finding would have adequate support.

        The only claim as to which the Court is uncertain is that of "Blues Man" (allegedly infringed by T-Pain's "Reggae Night").  "Reggae Night" is a dialogue or skit involving two women outside a night club with music playing in the background.  The court does detect

---

[50]  Compare the synthesizer melody playing throughout PAUL BATISTE, MOVE THAT BODY, with the melody in NELLY, MOVE THAT BODY at 0:04, 1:13, 2:14, and 2:48 to the end.

[51]  Compare PAUL BATISTE, I LIKE YOUR WAY at 1:00 – 1:30 and 3:34 – 4:03, with T-PAIN, PUT IT DOWN at 1:03, 1:20, 2:07, 2:23, 3:10.

similarity between the background music in "Reggae Night," which is a minor element of the recording, and Plaintiff's "Blues Man."  The "total concept and feel" of "Blues Man" versus that of "Reggae Night" is completely different.  Indeed, "Reggae Night" is not a song at all.   Dr. Ferrara opines that the "only melodic similarity" in the two songs are the "blues-based riffs." Rec. Doc. 58-4 at 118 of 191.  He concludes that the "melodic expression in these riffs ...embody no significant melodic similarity," their only commonality being their "use of 'blues' scales," which are "fundamental musical building block[s]." *Id.*   Dr. Ferrara's opinion may well be correct.  In virtually every other instance, his expert opinion has been borne out by the Court's lay ear.  However, in the case of "Reggae Night" versus "Blues Man," the Court is unable to reach this conclusion as a matter of law at this juncture due largely to the difficulty it has had in *hearing* the melody playing in the background in "Reggae Night."

Thus, based on the record as it currently stands, drawing all reasonable inferences therefrom in the plaintiff's favor, the Court is unable to conclude at this time that no reasonable juror could find a substantial similarity between "Blues Man" and "Reggae Night" using a "dissection" approach.   Accordingly, in light of the suggestion in *Positive Black Talk* that substantial similarity necessitates only that *parts* of a work be similar (provided the similar parts are sufficiently qualitatively and/or quantitatively important), the Court will deny summary judgment at this juncture as to this claim.  This holding is without prejudice to the defendant's right to re-urge a more targeted motion for summary judgment on the issue of substantial similarity directed to this claim alone.

### C.    A Word About Sampling:

The plaintiff's expert, Archie Milton, makes several allegations of digital "sampling" throughout his report.  *See* Rec. Doc. 111-2.   He bases these allegations on results he claims to

have obtained from a computer software called "Melodyne." *Id.* at 3.  The defendant's sampling

expert, Paul Geluso, raises serious questions concerning Mr. Milton's methodology.  *See* Rec.

Doc. 113-3.   The Court need not address these questions today, however, for the plaintiff has

made no allegations in his complaint that would give rise to a claim of digital sampling.   For

example, he has made no allegations that any copyright in sound recording has been infringed.

Rather, his allegations are limited to alleged infringements of copyrights in his music

compositions.  This, of course, raises the specter of an amending complaint.  The Court will

shortly issue a scheduling order with pretrial deadlines, including a deadline for amending

pleadings.  However, the Court strongly cautions the plaintiff that he should consider very

carefully any decision to add sampling claims.   First, while the Sixth Circuit has applied a

different standard to digital sampling (*i.e.*, where sounds from the plaintiff's sound recording are

not imitated, but rather are literally lifted from the recording and incorporated into the

defendant's recording),[52] other circuits have continued to apply the substantial similarity test to

claims based on sampling.[53]   Thus, it is far from clear that such claims would be exempt from

the analysis already applied herein.

Second, aside from possible impediments in the law, there is the serious concern of a

good faith factual basis.   While the plaintiff is certainly entitled to bring his *bona fide* grievances

to this Court, he is not entitled to throw everything he has against the proverbial wall to see what

might adhere.  The Court has limited resources, and the plaintiff has already taken more than his

---

[52]  *See Bridgeport Music, Inc. v. Dimension Films,* 410 F.3d 792 (6th Cir. 2005).

[53]  *See, e.g., Newton v. Diamond*, 388 F.3d 1189, 1194-95 (9th Cir. 2004); *VMG Salsoul, LLC v. Ciccone*, 2013 WL 8600435 *9 (C.D. Cal. 2013); *Saregama India Ltd. v. Mosley*, 687 F. Supp. 2d 1325, 1338-41 (S.D. Fla. 2009).

share by loading his complaint with over a hundred claims that had no realistic chance of

success.  The Court will not again sift through a mountain of chaff to find a tiny handful of

viable grains.   If an amending complaint is similarly laden, leave to file it will be denied.

IV.     **CONCLUSION:**

Accordingly;

     **IT IS ORDERED** that Defendant's Motion to Dismiss **(Rec. Doc. 58)**, which has been

converted into a Motion for Summary Judgment pursuant to Rule 12(d) of the Federal Rules of

Civil Procedure, is hereby **DENIED IN PART**, in that it is denied as to (1) "Move That Body"

(allegedly infringed by Nelly's "Move That Body"); (2) "I Like Your Way" (allegedly infringed

by T-Pain's "Put It Down"); and (3) "Blues Man" (allegedly infringed by T-Pain's "Reggae

Night"), and **GRANTED IN PART**, in that it is granted in all other respects.

     **IT IS FURTHER ORDERED** that the plaintiff's claims, with the exception of those

relating to (1) "Move That Body" (allegedly infringed by Nelly's "Move That Body"); (2) "I Like

Your Way" (allegedly infringed by T-Pain's "Put It Down"); and (3) "Blues Man" (allegedly

infringed by T-Pain's "Reggae Night"), are hereby **DISMISSED**.

     **IT IS FURTHER ORDERED** that the Case Manager shall set a telephone scheduling

conference for the purpose of setting a trial date and pretrial deadlines and shall proceed with the

call docket as to claims against named defendants who have not appeared.

     New Orleans, Louisiana, this 25th day of June, 2014.

            **KURT D. ENGELHARDT**
            **UNITED STATES DISTRICT JUDGE**